The last case of the morning is Medina Nursing Center versus the Health Facilities and Services Review Board. For the appellant we have Mr. Silverman, and for the appellee, Mr. Garlow and Ms. Wunder, you've divided your time, have you? You may proceed, Mr. Silverman. Good morning, and may it please the Court. Your Honors, this case really turns on one fundamental issue, which is so long as adversely affected parties under the Health Facilities Planning Act are going to be afforded the right to administrative review, that right has to have some meaning. Counsel, in presenting their arguments, rely heavily on Provena and Access Center, two sister circuit cases where holdings were presented that denied appeals to the appellate court regarding health facilities planning board decisions. But in doing so, they set up several strawman arguments to do so. So to clarify, I'd like to point out what it is we're not trying to do here, because I think it will help frame the issue. We're not asking this court to mandate findings of fact and conclusions of law. That's nowhere in our arguments. It's suggested so by the government and by counsel for the facilities that what we are trying to do is require findings of fact and conclusions of law. And there's ample case law that says where it's not required by statute, the board shouldn't be mandated to require findings of fact and conclusions of law. All we're asking is to have the ability for any reviewing court and any party that has the right to administrative review to be able to have some basis by which to discern why the administrative board acted in the way it did. We're not challenging the authority or the discretion of the board. There's ample case law that talks about the breadth of discretion that's afforded to the health facilities and services review board. There's no doubt of this. They have a multitude of criteria. There's a specific regulation which says that the board is allowed to approve projects despite the failure to meet all of the criteria. In fact, the only project that would ever come before the planning board that would be legally entitled to approval would be a project that met every review criteria, something that is almost unheard of in planning board projects. But it is exactly because of that discretion that is afforded to the board that it's important for a reviewing court to be able to have some insight into why the board acted as it did. And finally, we're not asking this court to substitute its own analysis or to substitute its own opinion. In fact, what we're asking to do is to create a circumstance which would allow the avoidance of that. There are as many proper and appropriate reasons to approve a project and to reach a decision as there are improper ones, and I think the history of the board has shown that. And if an adversely affected party is going to have a right to administrative review, then the absence of any rationale, any reasoning, any basis by which to discern why the board did what it did will result in stripping down that right to having absolutely no meaning. The appellate court and the circuit court, if they are going to review this, should not have to speculate as to why the board did what it did. Now, counsel has done a good job of presenting their post hoc rationale as to why the board could have approved these projects. They've gone through the record of documents that were presented to the board and constitute the application packet, and they have said it's possible that the board approved. Well, to be clear, counsel makes an argument that it's unclear why the board did what it did. But I will submit that none of us as we stand here can answer why the board approved this project, because it is just as possible that the board would have approved this project based on these findings as it is that the board would have denied this project. They have that much broad discretion. And it's not enough to rely on the deference that is afforded to an administrative agency to then substitute for deference to the post hoc arguments of counsel. If you look at the Provena case, the procedural history of Provena, I think, supports clearly the argument we're making. In Provena, twice before the appellate court reached its decision, it presented the conclusion that there was not enough basis by which the board reached its decision for the appellate court to determine whether or not the decision was reached properly or improperly. If you look at what happened in the Provena case, the appellate court remanded it back to the board. And the board prepared a statement that identified and outlined exactly what the reasoning and the rationale was. Now, this is something that I can speak to. I was general counsel of the board at the time this happened. As an attorney, as I sat down and wrote out all the potential rationale and reasoning for the board, my doing so had no meaning. It wasn't until the board had the opportunity to discuss that rationale and reasoning at an open meeting, to have it read into the record, and to affirmatively acknowledge that this, in fact, did represent and reflect their reasoning and their determination for approving a project. So what we have is counsel for the attorney general's office and counsel for the facilities, who have gone through the record and performed their own analysis as to why the project has merit and could have been approved. Equally, we've identified a variety of reasons why the project could not have been approved. We're left standing here with no insight or understanding as to why the board actually did what it did. Counsel, in presenting their arguments, conflates the administrative record on review, which includes every document that was submitted and constitutes the application package, with the record of proceedings. Most of the case law in which it is presented, where the cases hold that finding a fact of conclusion law is not required, the reviewing court was able to discern in those cases why the board acted, or excuse me, why whatever administrative agency acted in the way they did. You had adversarial proceedings. You had witnesses being called. You had a back and forth, and the reviewing court was able to look at that administrative record, excuse me, at the transcript of the proceedings and determine, through the back and forth, through the questioning, through the statements, why the government agency acted in the way they did. In this circumstance, what we have is we have, in effect, a stump speech by the applicant, presenting the benefits of the project they're proposing. We have two questions, back and forth, none of which are resolved, neither of which relate to any of the review criteria, and one of those questions is verification from the chairman that there was no opposition to the project, and the project's been approved. Now, counsel has presented that the rationale is presented in the approval letter, the approval letter which reads that the project was approved because it was found to be in substantial conformance with the applicable standards and criteria of Part 1110 and 1120. Your Honors, that is boilerplate. I don't believe the court would have to take much of a stretch to take judicial review of the fact that that exact language is in every approval letter for every project that the planning board ever considers and approves. And therefore, if the court is to allow that as the rationale, the result is that every single project that could ever come before this board, whether it's to establish a hospital, an end-stage renal dialysis center, to discontinue a nursing home, to expand a surgery center, all are approved for the exact same reason with the exact same rationale. I understand that federal case law is not controlling, but if the court might consider the rationale recently in two Seventh Circuit cases, Siddiqui being one, where the court criticized the over-reliance on the use of boilerplate language without providing any basis to understand that the government took into consideration and actually decided the issues before it. Why was the board told that there was no opposition to the project? Your Honor, our opinion is the board was misinformed. The opposition was clear. The opposition, there had been a public hearing. Now, we don't believe this was nefarious. We believe this was an honest mistake. That problem was compounded by the failure to comply with the Open Meetings Act because had the rights under the Open Meetings Act, which were in effect at the time, the opposition, which was a group of facilities that had organized amongst themselves. We were not representing them at the time. They are facilities in the area that had a substantial interest in expansion of health care in this community. And they all came and put forth various reasons. And there's, I think, a substantial question in the administrative record of whether or not the board was even aware of that opposition. But I would submit that that broadly relates to the deficiency of the record. There's no explanation. There's no correction of the fact that there was opposition. Counsel will likely point to the fact that on the schedule, there was a little line that says there was opposition. But I would submit that if the board members really were aware that there was opposition when that question had been presented, someone should have spoken up. To clarify, there was opposition. I've read through the comments. Several facilities raised these following issues. The absence of any discussion of any correction highlights the inability for this court to understand why this board did what it did. It's not enough to presume that the reasoning of the board was proper. And what we're left standing here is wondering why. Why did they do it? And we have no choice but to speculate. Counsel has come up with good arguments. We're not standing here saying there is no possible basis by which this project ever could under the sun have been considered. There are obviously merits to the project. The project did meet multiple of the criteria. The problem is so long as an adversely affected party is given the right to administrative review, that right has to have some meaning. It has to yield some purpose. It's easy, and counsel has done this, it's easy to write off the opposition because these are facilities in the area trying to protect their turf. And there's been case law that has said it's not the responsibility of the board to protect the market share of one facility versus another. We completely agree. We're not arguing that. But what we are arguing is what we would implore the court to consider. Adversely affected parties includes far more than just other facilities. Adversely affected parties is a defined term that has a laundry list of parties that all have a right to administrative review. And included in that are individual providers, other facilities, down to individual consumers of health care who are affected by the decision of the board. The idea that this is just an issue of competitors trying to protect their turf is simply untrue. Because what we're most concerned about is that anyone who has this right to administrative review should be allowed to have some basis, some insight into why the board acted the way it did. Now, if adversely affected parties didn't have a right to administrative review, then the failure to provide any rationale or reasoning would have no harm. And I think it's fair to acknowledge it's not often that both sides of a project have a right to administrative review. But in the event that the board isn't required to give some insight, some rationale, the value of that right is stripped down to absolutely nothing. Consider the consequences of the two positions. The consequence, if Apelli's position is allowed to go forward, is that the board would be entitled to approve a project with no rationale, no reasoning, no insight. The reason being is when we approve a project, we don't have to do so. And to be clear, as a practical matter, based on the way that the courts have interpreted the responsibilities of the board, if you stand at a board meeting, any project will come forth and the board members will say, I vote to deny because I find it doesn't conform with the financial need. I deny because it fails to meet the need criteria. I approve. I approve. I deny because all we need to do is add the word because. We're not asking for findings of fact. We're not asking for formal conclusions of law. If you consider procedurally where the requirement of findings of fact and conclusions of law come in, it comes in after a project's been denied and after they've appeared before an administrative law judge who writes a report and a recommendation, and then it comes back to the board with proposed findings of fact and conclusions of law that the board can either accept or deny, and it's the final step before the right to administrative review. When a project's approved, that approval is the final step before the right to administrative review. Again, we're not saying that it requires findings of fact and conclusions of law. What we are saying is it's fundamentally unfair to allow the board to approve a project with no basis, no rationale. How else is the court to be able to determine what the reasoning of the board was? The basis of administrative review, the fundamental requirements are determined. Did the board act properly? Did they consider proper factors? Did they consider improper factors? As this tribunal sits before me, there's no basis by which to know why the board did what they did. Councils presented wonderful arguments as to why they might have. I believe we have presented equally good arguments as to why the board could have reached the opposite decision. But the fundamental requirement of putting a reviewing court in a position to speculate is unfair. The ability to have a decision come forth with no rationale, to then be supported by boilerplate language, to then be bolstered by the post hoc arguments of counsel, when you combine that with, one, the discretion that's afforded to the board, and then combine that, two, with the presumptive deference that is going to be given to an administrative agency, it's, in fact, hard to imagine any circumstances in which a reviewing court wouldn't have any choice but to uphold the decision of a board. I don't believe I'm making a slippery slope argument or reductio ad absurdum to say, under the logic that's being allowed, you could have a project that is presented before the board. Does everyone approve? Yes. You get a boilerplate language permit letter, and then anyone who's adversely affected, who has the right to administrative review, would have a simple yay vote as their basis for administrative review. It's not a stretch. We're not very far from that in this application. So, what happens then? You appear in the circuit court and you argue that they acted in an arbitrary and capricious manner. What's your basis for that argument? There is none. Now, counsel may argue you have a right to seek a more definitive statement. You have a right to request it. You certainly have no obligation to do so, and it's not an adversely affected party's responsibility to make the board comply with the law. It's the responsibility of the board to allow for meaningful administrative review. There's ample case law that says that the reviewing courts will reverse if an agency makes a mistake. The problem is, we have no basis by which to know whether or not a mistake was made. There are specific examples. One of the key arguments that was presented, the only issue where there was a discussion, was the notion that this is a facility that will be in a more rural community and more rural residents. Would prefer not to have to come into the city to get health care. That's fine. The problem is that rationale is in fact the antithesis of the certificate of need process. The certificate of need process presumes that there is a limited number of health care dollars, that there needs to be an organized and comprehensive manner by which health care delivery will be overseen. Health care delivery would be best if there was a hospital in every corner, with a nursing home across the street from it, and a surgery center to the side. The problem is that Illinois has made the determination to be a certificate of need state, and therefore we have the rules and regulations that prohibit that free market advancement of health care. So the idea that this project may have been approved, and I say may have because I don't know, but may have been approved because the board decided, you know something, rural individuals who don't want to go into the city shouldn't have to. If that were the basis for the decision, that would be fundamentally improper. That would be a perfect example of the board not only failing to consider an important aspect of the statute in front of it, but considering and making a determination based on something that is contrary to its regulations. Now I can't stand here before this tribunal and argue that that's why the board did what it did, because I have no basis to know. It's not possible for a reviewing court to provide a meaningful administrative review when a decision can be issued without any basis or explanation. Now, I would submit the public has a right to know why its officials are making the decisions they're doing. If the board wants to go forth with findings of fact and conclusions of law, God bless them, I would have no objection. I would even, in fact, encourage it. I believe the more free flow of information, the better. I think the problem is the board can't be allowed to continue this process of providing no explanation, no justification. And as I submitted earlier, this can only be solved with a single word. If the board members simply add to their practice, I vote to approve the project because. Presumably, the board members have a reason for the actions they're taking. We want to believe that case law has supported that notion. But at the same time, it's not enough to presume. A reviewing court has to be able to know. So, if a board member simply is given the opportunity to say, I approve this project because I find that the benefits of the project outweigh, especially considering the need of rural residents. But otherwise, what we're going to be left with is adversely affected parties having no choice but to seek administrative review. Because as we stood looking at this decision, there was no basis by which to determine. We could perform our own analysis as to why we thought the project had no merits. That's what we did in our arguments laying out why we felt that the argument was arbitrary and capricious. But in reality, I don't believe this court can actually get to the question of arbitrary and capricious because what the court has before it is my speculation as to why the project had merits and counsel's speculation as to why the project was in fact approved when all we're doing is putting forth our best, well-educated, well-articulated guess. So, I would submit to the court that the right to administrative review is no less important when a project is approved than when it is denied. It is a statutory right that was part of the Planning Act and that is afforded to each of the individuals. When it's denied, when a project is denied, the party with the right to administrative review knows the basis for the board's decision and there's a process by which they are given that information. If a project's allowed, when a party has, if this is allowed to continue, when a project is approved, the party that has that same right to administrative review would have no right, no basis, no means by which to know what the basis for the board's decision is. And therefore, there's no way to go forward and to provide them a meaningful review to which they are statutorily entitled. There's no questions? Thank you. Mr. Farrell? Or is Ms. Bunder going to go first? As the court's noted, I'll be splitting my time with Mr. Garlow. I'll be focusing on addressing that the board's decision permits judicial review here. And Mr. Garlow will address the related issues that are raised. In considering the plaintiff suggests that this decision can't be meaningfully reviewed and I'm going to address that, but there's a piece of this issue that should be addressed up first, up front, and that's the question of a forfeiture because since 2009, which is before the time of the board's decision here, there's been a provision in the Act, Section 1211, that provides that when the board grants a permit, it allows competing facilities like the plaintiffs here or other adversely affected parties to seek a more detailed decision from the board. That was an administrative avenue that was available to them that they didn't pursue. So essentially, what they're now doing is criticizing the board for not providing what they chose not to seek. Is there provided in that language anything that says if they fail to do that, they forfeit the right to seek administrative review? No. And we believe that the decision here permits adequate judicial review. But if the court were to find that that's not the case, then in these circumstances where they had this avenue available to them and did not exercise it, there should be no remand in this case. The consequences of that should fall to them. I think in those circumstances, the legislative scheme is contemplating that there is this avenue to request this additional detail if someone believes that it's called for and they should have followed, they should have utilized that. Here, I think the existing decision provides for meaningful review, and we can look to that. But again, if they believed that they would like some more detail about this, they could have requested that, but did not. And so it should not be heard to complain about that now. With respect to the Board's decision, there's nothing in the Act or the regulations or the appellate decisions construing the Act that require the Board, when it's granting a permit, to make findings or conclusions. There are more procedures upon a denial where you do have a hearing and findings and conclusions and so on, but you don't have those procedures in granting a permit. And they say, well, we're not asking for that. But in actuality, they are essentially making a repackaged request for findings and conclusions. They're not asking for anything that's meaningfully distinguishable. Here, they say, well, there's no reason. We just want the Board's reasoning. They got a reason. They got a procedurally sufficient reason. The Board granted the permit because it determined the project substantially conforms with the applicable review criteria in Parts 110 and 120. That's the reason. It then told us, and here's how we reached that conclusion. We looked at the Department's report, the application materials, and the testimony. So we know what the Board decided, and we know the universe of materials that it used to reach that decision. The Court can conduct a meaningful judicial review on that basis, just as it would in any other case. It would look at, okay, the Board found the project substantially conforms with these criteria based on this evidence. The Court then looks to that evidence and determines whether that decision is substantially erroneous or, excuse me, clearly erroneous, or whether there's evidence to support it. That is a meaningful judicial review, just as the Court would have done in other cases, and just as Courts have done in other decisions applying the Planning Act. This is no different. So they received a procedurally sufficient reason. What they're asking for here is not different from findings and conclusions. They're calling it elaboration. What they're saying implicit in that is the idea that the Board had to specifically address each criteria. So they're saying, well, we needed to know how some of these criteria played out. The Board had to specifically state, you know, for example, why it did not find that the plaintiff's objections defeated substantial conformance. But that's not necessary to provide a meaningful review.  One of the things that the plaintiffs are bringing up now, the Provena Court tells us, no, in reviewing the grant of a permit, the Board doesn't have to specifically explain why it's approving the applications. We don't need these type of explanations about how and why specific criteria were applied. And Provena Court is reaffirming an earlier decision in Charter Medical where, once again, that court is finding these permit letters are sufficient, the same level of generality that's here, and they comply with the regulations. And the court was able to perform a meaningful judicial review and tells us we didn't need any additional explanations about how and why specific criteria were applied.  Now, that was a different case because the appellate court remanded the matter for a statement of reasons, and that's really what we want here. That's not correct. In Provena, the circuit court had remanded the matter to the Board for an additional statement of reasons. The appellate court does not suggest, does not endorse that or suggest that that was anything that would be required. The appellate court instead tells us we don't need specific explanations about how individual criteria were applied. Council did not address an additional case that's very relevant here, which is a second district decision called Access Center, which is exactly the type of situation presented here where the Board approves a permit for a treatment center even though all of the review criteria are not met. And the claim is made that because all of these review criteria were not met, and there it was the need criteria that were not in conformance, just as is the case here, based on the Department's fact-finding report. So the claim is made, well, given that the Board approved this and that these criteria were not met in the Department's fact-finding report, the Board should have to tell us why it's nonetheless approving the project. And the court finds we don't need that level of detail. We don't need the Board to tell us the specifics about how and why certain criteria were applied. The court goes on and performs a perfectly meaningful judicial review, looking at that record, finding that there is evidence to support the Board's decision, and that there's nothing arbitrary and capricious about the decision there. That's exactly the situation that we have here. So this is really a repackaged request to try to get around a notion that's already been rejected by courts that have considered this. This court at Cathedral Rock, not faced with quite the same situation, but still performed a meaningful judicial review and looked at a very record-based approach, looking at the materials that were before the Board and again finding we can look at this record and there is a substantial conformance here. So there is a meaningful judicial review. Council has referred to cases in other administrative review contexts. I think what's most significant is not a single one of those cases deals with what is sufficient to review the Board's grant of a permit. There's no Illinois Supreme Court decision. There's no Illinois Appellate Court decision that suggests that, has ever found that the Board's rationale for issuance of a permit is insufficient and a remand was required to address that. Those cases most establish that in some contexts and some records, perhaps there is some impediment. There's a meaningful impediment to meaningful judicial review. In those cases generally it comes down to sometimes it may be the case that the court cannot adequately understand the basis of the decision. But that is very much not the case here where we have the basis for the decision. We have the reasoning, the explanation, the rationale. Council wants to say that's missing but there is a procedurally adequate reason. The Board determined that the project was in substantial conformance, mostly harmonious, with these regulations. They don't need to get into specific criteria and they told us what they looked at. So that is a meaningful review. Review those materials and see if they support that conclusion. The council has referred to some circuit decisions saying, well, there's some criticism of boilerplate. Again, that's in very different circumstances. That was using a template to assess the credibility of witnesses and denying certain benefits. None of that is here. The most important cases is the context of looking at what is required when the Board approves a permit. The court can perform a meaningful judicial review based on what is before it. That's consistent with the Act, the regulations, all of the case law that provides approval of a permit and consistent with the principles of meaningful judicial review. So there should be no remand in this situation. Thank you. Thank you. Mr. Garlow. Good morning. Please, the Court. I'm Jonathan Garlow on behalf of your health care, Pecatonic Pavilion. I'm here to address the sufficiency of the evidence before the Board that supported its unanimous decision to approve Pecatonic's application. And frankly, my remarks on that point should be brief. As you heard Mr. Silverman admit moments ago, there was evidence before the Board that supported the approval of this project. And under the deferential standard of review applicable here, that's enough. So long as there's any evidence which fairly supports the agency's decision, this Court is required to affirm the agency's decision. In fact, there was more than sufficient, there was ample evidence that supported the Board's decision here. In fact, I'm going to point out that the arguments regarding bed need and the arguments that you've seen in the briefs were presented to the Board and, in fact, explicitly addressed by the Board at the hearing. You'll see on pages 32 and 33 of our brief, we quote, there was a very extensive exchange between Board member Ronald Eaker and Pecatonic's George Anderson, where Eaker inquired about the number of beds available in the surrounding area and the availability of facilities within a 30 to 45-minute drive. And he noted that Pecatonic's application is not the only application we have for an area and that there is an excess of beds in the area. And Mr. Anderson responded by, I think, telling me, he pointed out that Pecatonic is a rural community within a 575-mile market radius. There are other nursing homes within the market area, to be sure, but they're all 30-minute drive. And Pecatonic, if you're unfamiliar with the area as I am, it's a small village in northwest Illinois about halfway in between Rockwood and some of the residents travel to Rockford, some travel to Freeport, but there's nothing in that middle. And that's what the Pecatonic Pavilion was aimed to address. Now, that may be a wise decision, that may be an unwise decision, but that's a decision that's entrusted to the Board to make the determination whether such a facility makes sense under the Planning Act. I also want to address a question that Justice Pope raised in response to Mr. Silverman's arguments, and if I heard you correctly, Justice Pope, I think you asked why the Board was told there was no opposition to the project. And I think if you look closely to the transcript of the hearing before the Board, that's not what the Board was told. We provide that exchange on pages 22 and 23 of our brief. The question that the Chairman asked was, is there any opposition to this? And the this to which Chairman Glassie was referring was not Pecatonic's application on its whole, but it was the statement that immediately preceded the Chairman's question, and that was the description of Pecatonic's application as an open admission policy, or open admission facility, as opposed to a CCRC. So the Board was never told that there was no opposition. In fact, there's ample evidence in the record that indicates the Board knew that there was opposition to its application. First, as Mr. Silverman acknowledged, there was the agenda, which each Board member received, which denoted the fact that there was opposition to its application. But there was also the SAR, the Department's State Agency Report, which not only noted the fact there was opposition, but described in detail the nature of that opposition.  letter explicitly noted the fact that the Board had considered that report when it voted on the application. So there's no evidence in the record to suggest that the Board was unaware that there was opposition to Pecatonic's application. There's a second misconceived argument in the briefs that I want to address today, and that is the suggestion that Pecatonica misrepresented the nature of its application. And it's true that during the hearing before the Board, George Anderson of Pecatonica did refer to the application as arising under the CCRC variance. But he was immediately corrected by the Department. And later, Revere's witness again testified before the Board, this is a project for an open mission. And I think probably the most telling part of that transcript is merely seconds before the Board voted unanimously to approve the application. Again, a different state witness this time, again reminding the Board, this is a request for an open mission facility. Now, Pecatonica's application notes that it's seeking an open facility as opposed to a CCRC variance. The SAR notes that the application is not submitted under the CCRC variance. And the approval letter makes no reference to the CCRC variance. There's simply no evidence in the record to suggest the argument in Plaintiff's briefs that the Board was misled about the nature of the application under which they were submitted. I want to point out or reemphasize the point that Ms. Wunder capably pointed out to the Court, and that is this Court is not drawing on a blank slate here. In addition to the Provenic decision and the Access Center decision, both of which Ms. Wunder discussed with you, there's also this Court's decision in Cathedral Rock. And I think there's a number of things in Cathedral Rock that this Court should keep in mind. First, perhaps most tellingly, given that Access Center is on point on every argument that the Plaintiffs were making here, this Court in Cathedral Rock expressly adopted Access Center and applied it regionally. So for this Court to do what the Plaintiffs are asking them to do and all of a sudden reject the second district's view in Access Center would be an about-face for this Court. The second point about Access Center that I want to remind the Court is, again there, there was not perfect compliance with every criteria set forth in the Act. There were, I believe, three criteria in that case. But the Court, again, said you don't need to satisfy all criteria. The Board is entrusted with discretion to make these determinations. And that's what the Board is here to do. And the final point I want to leave the Court with today is, and this is stepping on Ms. Wunder's toes a little bit, but I think Mr. Silverman's argument today lays bare the risk that we pointed out in pages 20 and 21 of the Court Brief. And that is, what they're asking for is reasoning, not findings of fact and conclusions of law. He begins his argument today by saying, we're not asking the Court for findings of fact and conclusions of law. We're asking for something different. We're asking for reasoning. But his well-articulated argument continues. He gets to what he's really asking this Court to do. He says, the Court, we need the members of the Board to say, I vote in your favor because I find, blah, blah, blah, blah, blah. What is that? I find. What I find is a findings of fact and conclusions of law. That's what Ravina says. The Board is not required. That's what Access Center says is not required by the Board. And that's what, in fact, the regulations in the statute itself says is not required by the Board. Unless the Court has any further questions. I see none. Thank you for your time. Thank you. Silverman, rebuttal. Just to address a few of the points that were raised. The first is with regards to the forfeiture argument. As counsel acknowledged and as the regulation is clear, it's an option, it's not a requirement. Now, I do need to correct one factual inaccuracy, which is the option to seek a more definite statement actually applies both when a project is approved or denied. And there are endless numbers of projects in which a project is denied and then the case proceeds to the administrative review in front of an more definitive statement. Some people tactically choose to do it. Some people tactically choose not to. But to now confer to after the fact when there is no statement, no basis, no reasoning to take an option, but by no means an administrative or procedural requirement, and then use that to bar an applicant from administrative review. Furthermore, I would submit to you if it is interpreted that way, the regulation would therefore be inconsistent with the statutory right, which provides a right to administrative review for an adversely affected party. Again, some of the arguments that have been presented, they've revealed sort of the straw man nature of the arguments. Counsel stood here and said that we are requiring that the board members address each criteria. No such requirement, no such request has ever been made. That we are demanding that applications have perfect compliance to be approved. That's not in any way what we're asking. Now, did I identify one of the options, which is this would easily be solved in the event that board members win voting, said I vote yes because? Absolutely. That would be, in my opinion, the simplest fix. But let me be clear, and this relates to all of the case law, that's only one option. Another option would be as if there was a meaningful discourse between the board such that when someone, a review in court, looked at the transcript of proceedings, they were able to discern why the board did what it did. Counsel for the government stood before you and argued that in the record, the basis, the reasoning, the explanation, and the rationale of the board's decision are all clearly present. If that's the case, if this tribunal can look at the transcript of proceedings before this board and determine the basis, the reasoning, the explanation, and the rationale, then I submit we will likely lose. The issue is this, and counsel for the facilities argued that if there's any basis in the transcript of proceedings but the record to support a decision, then they have to win. That might be true if the only issue here is the decision arbitrary and capricious. But as I submitted earlier, I don't think we ever get to the question of arbitrary and capricious because as we stand here, if, as I believe, when you look at the proceedings before the board, there's no basis by which to discern why the board did what it did, then a review in court is left with no choices but either, one, to perform their own analysis, two, to defer to the post hoc arguments of counsel, or three, to rubber stamp the decision. And none of those are allowed under the law. To briefly address the issues that were raised regarding Provena and Access Center. The issue with regard to Provena, I do apologize if I stated it was the appellate court, not the circuit court that remanded the matter. But the fundamental tenet is the same, which is when the reviewing court said we can't determine why the board did what it did, the appropriate step was to remand it back to allow the board, not counsel, but to allow the board to speak to why it took the action it did. And not until the reviewing court was confident that it was able to be able to evaluate the propriety of the board's decision was it allowed to go forward. The second issue with regards to Access Center. The core issue with Access Center was whether or not the right decision before the board was made. It was an arbitrary and capricious decision. And it's important to consider the holding there, where the court said, whereas here the testimony before the administrative agency is preserved for review in the record, then specific findings of fact are not required for judicial review. Again, if this tribunal believes that it can discern why the Health Facilities and Services Review Board did what it did from the record of the proceedings before the board, from the transcript before the board, however I submit to you, there is no insight. There is no explanation. And without any explanation as to why an administrative agency is taking the action it is, the right to administrative review is meaningless. That is the fundamental reason that when a project is denied, findings of fact and conclusions of law are required. As long as an adversely affected party will have a right to administrative review, and it is a statutory right which the legislature chose to give, that review must have meaning, which means the reviewing court must have some basis by which to determine why the agency took the action it did. Without any other further questions, I thank the court for its time. Thank you. Okay, the recess until 1 o'clock.